# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

# FILED

APR 15 2008

**Clerk, U.S. District and Bankruptcy Courts**

**THOMAS PHILIP RAMSTACK**
Plaintiff
816 Easley Street, No. 407
Silver Spring, MD 20910

v.

**U.S. DEPARTMENT OF THE ARMY, CENTRAL INTELLIGENCE AGENCY, U.S. DEPARTMENT OF STATE**
Defendants

U.S. Department of the Army
103 Third Ave. SW, Building 32, Suite 300
Fort McNair
Washington, DC 20319-5058

Central Intelligence Agency
Washington, DC 20505

U.S. Department of State
2201 C Street NW
Washington, DC 20520

Office of Staff Judge Advocate
Military District of Washington
Attn: Mike Egan, Esq.
103 Third Ave. SW, Building 32, Suite 300
Fort McNair
Washington, DC 20319-5058

Military District of Washington
108 Sheridan Ave., Building 415
Fort Myer, VA 22211-1110

Legal Administrator
Central Intelligence Agency
Washington, DC 20505

Christopher Riche
Executive Director
Office of the Legal Advisor
U.S. Department of State
2201 C Street NW
Washington, DC 20520

U.S. Attorney General
950 Pennsylvania Ave. NW
Washington, DC 20530

Case: 1:08-cv-00658
Assigned To : Urbina, Ricardo M.
Assign. Date : 4/15/2008
Description: FOIA/Privacy Act

1

U.S. Attorney for the District of Columbia
501 Third St. NW
Washington, DC 20001
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

COMES NOW the Plaintiff, Thomas Philip Ramstack, and represents to this honorable Court as follows:

### I. NATURE OF ACTION

1.1 This is an action to compel disclosure of material sought under the Freedom of Information Act, Privacy Act and all other applicable laws.

### II. JURISDICTION AND VENUE

2.1 This action is brought pursuant to 5 U.S.C. 552, sections (a) and (a)(4)(B) to enjoin and order the U.S. Department of the Army, the Central Intelligence Agency and the U.S. Department of State to produce records improperly withheld from plaintiff and to amend any inaccuracies.

2.2 Jurisdiction in this Court is conferred by 5 U.S.C. 552(a)(4)(B), which confers this Court with authority to enjoin agencies from withholding agency records improperly withheld under the Freedom of Information Act ("FOIA) and under 5 U.S.C. 552(a), the Privacy Act of 1974, to amend any inaccuracies or inconsistencies in the records.

2.3 Venue in this Court is conferred by 5 U.S.C. 552 (a)(4)(B), which provides that a complaint thereunder be filed in the district in which the complainant resides or has a principal place of business or in which the agency records are situated. In this instance, some of the records are situated in Washington, D.C., and plaintiff's principal place of business is in Washington, D.C.

### III. PARTIES

3.1 Plaintiff Thomas Philip Ramstack (hereinafter plaintiff) is a Silver Spring, Maryland resident with a principal place of business in Washington, D.C.

3.2 Defendants U.S. Department of the Army, Central Intelligence Agency and U.S. Department

2

of State are agencies as defined in 5 U.S.C. 552(f)(1).

## IV. FACTS

4.1 Plaintiff was a member of the U.S. Army, apparently after induction on or about Nov. 1, 1973, while in Valladolid, Spain, during a Cold War confrontation with the Soviet military. His military service continued until at least Nov. 1, 1975, according to Department of Veterans Affairs records.

4.2 Plaintiff appears to have suffered military service-related injuries, including poisoning that left him with toxic encephalopathy, a form of permanent brain damage with symptoms such as seizures, memory lapses and distortions, difficulty concentrating, sleep interruption, fatigue and spontaneous utterances.

4.3 Plaintiff never was compensated by the U.S. Army for either his military service or the permanent disability he suffered as a result.

4.4 Plaintiff's memory lapses and distortions left him unable to remember the exact nature of his service to the U.S. Army or the cause of his brain damage. The brain damage also interfered extensively with his employment, social life, income and personal well-being and took years of self-training and rehabilitation before plaintiff could return to normalcy.

4.5 Plaintiff made numerous FOIA inquiries to the U.S. Army, the Central Intelligence Agency and the U.S. Department of State, beginning around 1983 and continuing to 2006, to discern the nature of his service to the U.S. Army and the cause of his brain damage but was told each time the aforementioned agencies had no record of him.

4.6 In August 2007, plaintiff received a letter from the U.S. Department of Veterans Affairs addressed to him as a veteran and warning him of a computer security breach that could affect him and many other veterans. Plaintiff called the telephone number listed in the letter to ask when their records show he served in the military. The clerk he spoke with looked up his records under his Social Security number (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) and found he was in the U.S. Army from November 1, 1973 to November 1, 1975.

3

4.7 Based upon the August 2007 letter and phone calls to the Department of Veterans Affairs, it can be inferred defendants have failed to properly respond and provide the requested information in violation of current federal law.

## V. CAUSE OF ACTION ALLEGING VIOLATIONS OF 5 U.S.C.A. 552 FREEDOM OF INFORMATION ACT AND THE PRIVACY ACT

5.1 Plaintiff re-alleges and incorporates herein the allegations set forth above.

5.2 Defendants, while under a legal obligation to do so, failed to provide plaintiff with information that he requested and was legally entitled in violation of federal statute. Further, that defendants acted arbitrarily and capriciously in their failure to provide said information to plaintiff.

5.3 5.2 Defendants, while under a legal obligation to do so, have maintained inaccurate and inconsistent records on plaintiff in violation of U.S. Army regulations and federal statutes.

5.3 Pursuant to the Freedom of Information Act and the Privacy Act of 1974, defendants are liable to plaintiff for production of said information, for inaccuracies in their records and legal costs.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully demands judgment against defendants as follows:

1. That proper process issue and be served upon defendants, requiring them to answer the Complaint within the time required by law;

2. That the plaintiff be awarded a judgment against defendants and an order of mandatory injunction to compel disclosure of material sought under the Freedom of Information Act, Privacy Act and all other applicable laws. Further searches and production of records should be ordered.

3. That this honorable Court issue a written finding that the agency personnel acted "arbitrarily and capriciously" pursuant to 5 U.S.C.A. 552 provisions that include the Freedom of Information Act and the Privacy Act;

4. That plaintiff be awarded his costs, litigation costs and discretionary costs pursuant to 5 U.S.C.A. 552;

4

5. That plaintiff have such other, further and general relief as to which he is entitled.

Respectfully submitted

DATED: April 14, 2008

*Tom Ramstack*

Thomas P. Ramstack (pro se)
816 Easley Street, No. 407
Silver Spring, MD 20910

phone: 301-585-3450
e-mail: tramstack@aol.com

5

## MEMORANDUM OF POINTS AND AUTHORITIES

Table of Contents

Background    pages 7 - 9

I. The U.S. Army et al Have Failed to Meet Their Burden of Showing They Conducted an Adequate Search for Responsive Records under the Freedom of Information Act    page 9

A. The Legal Standard Governing Searches    page 9

B. The U.S. Army Has Failed to Conduct an Adequate Search    page 10

B.2 The U.S. Army Has Failed to Adequately Describe its Search    page 11

II. The U.S. Army et al Have Failed to Keep Complete and Accurate Records on Plaintiff in Violation of the Privacy Act    page 11

III. The U.S. Army et al's Failure to Produce Relevant Information Cannot Be Justified under National Security Exemptions of FOIA    page 12

Exhibit A: Medical analysis indicating brain damage

Exhibit B: Notice to Veteran of Computer Security Breach

Exhibit C: Notice of a Lack of Records of Enlistment

Table of Cases

Doe v. Federal Bureau of Investigation, 9d36 F.2d 1346, 1350 (D.C. Cir. 1991)   page 12

Founding Church of Scientology, etc. v. Nat. Sec. Agency, 610 F.2d 834, 836-837 (D.C. Cir. 1979)    page 10

Jefferson Morley v. Central Intelligence Agency, (D.C. Dist. Ct. 2007), CA No. 06-5382 page 11

Meerpol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1990)    page 10

National Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973)    page 9

Summers v. Department of Justice, 140 F.3d 1077, 1082 (D.C. Cir. 1998)   page 12

Tax Analysts v. U.S. Dep't of Justice, 845 F.2d 1060, 1064 (D.C. Cir. 1988)    page 11

Truitt v. Department of State, 897 F.2d 540 (D.C. Cir. 1990)    page 10

## BACKGROUND

In this Freedom of Information Act and Privacy Act case, plaintiff seeks records pertaining to his service in the U.S. Army and related incidents as a basis for a disability claim and compensation for service and damages.

Plaintiff appears to suffer from toxic encephalopathy, a form of brain damage caused by exposure to toxins that includes memory lapses and distortions, sleep disorder, difficulty concentrating, seizures, fatigue and spontaneous utterances. [Plaintiff's Exhibit A] The brain damage appears to be related to his service to the U.S. government.

The brain damage appears to have started in 1973, about the time U.S. Army records indicate plaintiff was inducted into the military in November 1973. Plaintiff was 17 years old at the time, one year under the legal age of induction.

Memory lapses and distortions, as well as a reluctance of U.S. government agencies to provide relevant information, have prevented him from gathering the evidence needed to support his claims until now.

Plaintiff believes he was unwittingly involved in a 1973 secret war in Spain.

Plaintiff has filed numerous Freedom of Information Act requests for information about the situation, beginning in the early 1980s, seeking information from the CIA, the U.S. Department of State and the U.S. Army. His memory lapses and distortions from brain damage prevented him from recalling the names of all persons involved or from forming a clear time line of events.

All of the responses indicated they had no records of plaintiff. [See Plaintiff's Exhibit B]

In August 2006, plaintiff received a letter from the U.S. Department of Veterans Affairs addressed to him as a veteran and warning him of a computer security breach that could affect him and many other veterans. [See Plaintiff's Exhibit C]

Plaintiff called the telephone number listed in the letter to ask when their records show he served in the military. The clerk he spoke with looked up his records under his Social Security number (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) and found he was in the U.S. Army from November 1973 to November 1975.

Plaintiff asked if there was any other Army department he could check to ensure the information was correct. The clerk referred him to the Veterans Affairs headquarters in Philadelphia, where again he telephoned and was told by a clerk their records showed he served in the Army between November 1973 and November 1975.

On Sept. 4, 2006, plaintiff filed a VA Form 21-526 (Veteran's Application for Compensation) with the Veterans Administration. He received a response dated Oct. 11 that said the Veterans Administration needed more information to process his claim. Among the information they requested was:

• "...evidence to support your claim of being a former prisoner of war."

• "...statements from fellow prisoners of war, service persons, veterans, doctors or other persons who knew of your disabilities in service or shortly after."

• "The dates of medical treatment during service."

Plaintiff was unable to supply the information because of the aforementioned brain damage and because of the refusal of defendants to provide the necessary records.

After the Veterans Administration denied plaintiff's claim for benefits, he appealed. The Veterans Administration denied the appeal in an Aug. 15, 2007 letter from the U.S. Army Human Resources Command - St. Louis. It said, "We have determined from these sources (U.S. Army records) that we are unable to answer your request for the following reason(s): We were unable to locate a record of Army service for the individual identified above in our automated systems, based on the Social Security number provided in your request."

Plaintiff traveled to Spain as a 17-year-old foreign student for a semester abroad beginning in June 1973. While he was staying at a private home of a host family in Valladolid, Spain, he believes he was attacked by Soviet military personnel who held him captive for a week, beat him, tied him up, apparently poisoned him and threatened to kill him.

Plaintiff seems to recall that he later was contacted by someone from the U.S. Embassy in Madrid, who sent General Alexander Haig to speak with him. General Haig was then Supreme Allied Commander of NATO and later U.S. Secretary of State.

The discussion between plaintiff and General Haig centered on the fact the Soviets were infiltrating into Spain in an apparent coup attempt. The American Air Force base at Torrejon

appeared to be one of their targets.

It was then – sometime around November 1973 – that plaintiff seems to recall telling General Haig he would volunteer to help out, which he believes included induction into the U.S. Army.

As plaintiff recalls, during the next few weeks, the Spanish Army forcibly expelled the Soviets from Valladolid and the surrounding area, resulting in numerous deaths. Air support assistance was provided by the U.S. Army and Air Force from the American Air Base at Torrejon. Among the incidents during the conflict were several assassinations by poison and shootings of American Embassy personnel.

As plaintiff recalls, plaintiff was in Valladolid during the conflict, where he was exposed to gunfire while at the same time trying to inform General Haig and American Embassy personnel of relevant events. He recalls being held as a prisoner for several days by Soviet military personnel.

Plaintiff has suffered a disability, apparently from exposure to toxins as a result of his service to the Army, that has created great mental anxiety and physical distress for him, including impairment of his personal life, health, finances and career.

He has tried tracking down the exact source of his brain damage previously by calling family members, old college roommates, college professors and other people he had had not seen for decades in a wasted search for information. He also called the Spanish Embassy. None knew what he was talking about and all seemed uncomfortable with such a strange request for information.

Plaintiff suspects the lack of information provided to him by government agencies could represent a cover-up of a Cold War political and military confrontation.

## I. THE U.S. ARMY ET AL HAVE FAILED TO MEET THEIR BURDEN OF SHOWING THEY CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS UNDER THE FREEDOM OF INFORMATION ACT

A. The Legal Standard Governing Searches

To prevail in an FOIA case, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." National Cable Television Ass'n v. FCC, 479 F.2d 183, 186

(D.C. Cir. 1973).

The D.C. Circuit also found that "if, in the face of well-defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, the Act will inevitably become nugatory." Founding Church of Scientology, Etc. v. Nat. Sec. Agency, 610 F.2d 834, 836-837 (D.C. Cir. 1979).

The law requires the search to be adequate – a standard that is met only if the records provided respond to a request. (...adequacy is measured by the reasonableness of the effort in light of the specific request"). Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1990).

The D.C. Circuit explained its position further in Truitt v. Department of State, 897 F.2d 540 (D.C. Cir. 1990), saying:

"It is elementary that an agency responding to an FOIA request must 'conduct[...] a search reasonably calculated to uncover all relevant documents,' and, if challenged, must demonstrate 'beyond material doubt' that the search was reasonable. The issue is not whether any further documents might conceivably exist bur rather whether the government's search for responsive documents was adequate. The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case."

B. The U.S. Army Has Failed to Conduct an Adequate Search

Here, the U.S. Army has not demonstrated "beyond material doubt" that the search it conducted was reasonable. The evidence listed below will show the inadequacies of the Army's search.

B.1. The Army says in its response to plaintiff's appeal that it searched the database of the U.S. Army's Human Resources Command at St. Louis. However, the Army personnel gave no indication they searched the Veterans Administration records in Baltimore or Philadelphia, where the personnel and correspondence from the Army indicate plaintiff spent two years in military service between 1973 and 1975. A clerk at the Philadelphia office further indicated the lack of records in St. Louis indicated a personnel file was not properly transferred to the Human Resources Command.

The fact the Human Resources Command searched only its own database does not exempt the Army from a requirement to produce records in response to plaintiff's FOIA request. The FOIA has no such exemption. Plaintiff's FOIA request asked for "all records..."

The FOIA has a "settled policy" of "full agency disclosure." Tax Analysts v. U.S. Dep't of

Justice, 845 F.2d 1060, 1064 (D.C. Cir. 1988) (quoting S. Rep. No. 89-813, at 3 (1965), aff'd, 492 U.S. 136.

In addition, "Congress has authorized only nine categories of exemption from this policy and practical considerations that documents exist in another forum outside the agency is not amongst them." Jefferson Morley v. Central Intelligence Agency, (D.C. Dist. Ct. 2007). CA No. 06-5382.

B.2 The U.S. Army Has Failed to Adequately Describe Its Search

The U.S. Army has failed to adequately describe its search. As a result, its claim to have conducted an adequate search cannot be sustained.

To evaluate the adequacy of a search, it is necessary for the Army to provide details about the way the search was conducted. However, only limited information about the search was provided by the Army.

Its letter said only that it searched its human resources database.

Because the Army has several separate record systems, some of which are shared by agencies such as the Central Intelligence Agency and the U.S. Department of State, an adequate search would require providing information about the search methods used and how they responded to each item in plaintiff's FOIA request and his appeals of the FOIA request.

Otherwise, it would not be possible to evaluate the adequacy and reasonableness of the search.

A computer search of a single database would be meaningless if the wrong terms are searched, the wrong database is searched or if the record system is not indexed in a way that would retrieve the kind of information sought.

## II. THE U.S. ARMY ET AL HAVE FAILED TO KEEP COMPLETE AND ACCURATE RECORDS ON PLAINTIFF IN VIOLATION OF THE PRIVACY ACT

As noted, the U.S. Army et al claimed in their responses to plaintiff's FOIA requests that they had no records on plaintiff. Yet, the Department of Veterans Affairs did have records of plaintiff's military service from 1973 to 1975.

The Privacy Act requires federal agencies to maintain records used in making determinations "with such accuracy, relevance, timeliness and completeness as is reasonably necessary to assure

fairness to the individual in the determination [about the individual]…" (D.C. Dist. Ct. 2007) CA No. 07-0087 (PLF), quoting 5 U.S.C. 552a(a)(5). Section 552a(d) allows individuals access to agency records about themselves and to request the amendment of records "they believe to be inaccurate, irrelevant, untimely or incomplete." (Doe v. Federal Bureau of Investigation, 936 F.2d 1346, 1350 (D.C. Cir. 1991).

## III. THE U.S. ARMY ET AL'S FAILURE TO PRODUCE RELEVANT INFORMATION CANNOT BE JUSTIFIED UNDER NATIONAL SECURITY EXEMPTIONS OF FOIA

As noted, plaintiff suspects a cover-up based upon his age, the nature of his disability, the location and time of his induction into the U.S. Army. Id.

While such information might have been classified or withheld during the Cold War, the right of government agencies to withhold the information ended with Executive Order E.O. 12958, as amended by E.O. 13292.

The current executive order is intended to bring to light information from the Cold War that might previously have been held as secret under national security provisions.

The D.C. Circuit said E.O. 12958 reflects "dramatic changes in national security concerns in the late 1980s following the United States' victory in the Cold War." Summers v. Department of Justice, 140 F.3d 1077, 1082 (D.C. Cir. 1998).

Here, although the U.S. Army did not assert classification as a matter of national security, the inference that it might seek such a classification is unavoidable considering the aforementioned circumstances.

Respectfully submitted

DATED: April 12, 2008

*Tom Ramstack*

Thomas Philip Ramstack
816 Easley Street, No. 407
Silver Spring, MD 20910

Phone: 301-585-3450
e-mail: tramstack@aol.com

APR 1 2008

12

Plaintiff's Exhibit A



# Johns Hopkins Medicine

## *CLINIC NOTE*

| | | | |
|---|---|---|---|
| **Name:** | Ramstack, Thomas P | **History:** | 7-233-39-66 |
| **Address:** | 816 Easley Street | **Visit Date:** | 05/26/1999 |
| **:** | Apt 407 | | |
| **:** | Sivler Spring MD 20910 | | |
| **Phone:** | (301)585-3450 | | |
| **Dob:** | 03/02/1956 | **Location:** | 228 |
| **Race:** | White | **Document No:** | 849430 |
| **Sex:** | Male | | |

**Primary Provider:** Crone,Nathan Earl
**Other Provider:**

**Reason for Visit:**

Evaluation for management of seizurelike episodes.

**History of Present Illness**

Mr. Ramstack is a 43-year-old right-handed white male with a history of multiple neurological complaints. He presents for neurological consultation regarding the etiology and management of seizure-like episodes and other neurological complaints. I obtained his history by interviewing him. He did not fill out a questionnaire for me. I interviewed, examined and counseled Mr. Ramstack for about an hour.

Mr. Ramstack believes that when he was 17 years old he had a "stroke" or something similar. He thinks that this might have been caused by exposure to some sort of toxin. He was a foreign student in Spain at the time. His symptoms were insomnia, memory lapses and distortions, decreased concentration, irritability, seizure-like episodes, and sexual dysfunction. The seizure-like episodes consisted of sudden stereotyped nodding of the head and flexing the arms repetitively for one to two seconds. This could sometimes repeat itself up to one minute at a time. These episodes have continued until the present day and currently occur with a frequency of about two times every one and one-half hours.

Mr. Ramstack also describes episodes when he is walking and suddenly begins to run several feet, then stops. These episodes occur with a frequency of roughly three to four times every day.

Mr. Ramstack's other complaints include insomnia. This has been a chronic problem for him since it began at 17 years of age. For this he takes melatonin 3 mg every night and 5-HTP, an analog of tryptophan, once every night.

Mr. Ramstack also reports sexual dysfunction. When I asked him to be more specific, he says that he often has obsessive thoughts about abnormal sexual material, and often he involuntarily mumbles nonsense that includes

08 0658

**FILED**

APR 15 2008

Clerk, U.S. District and

Patient: Ramstack, Thomas P                    2                    History # 7-233-39-66

graphic sexual remarks. This involuntary speech may last up to one to two minutes at a time and may occur with a frequency of every one and one-half hours. He has never experienced any lapse of consciousness or postictal confusion associated with these episodes or with the other episodes that he calls seizures. He does admit, however, that these episodes are exacerbated with fatigue and stress and sometimes by reading technical material such as may be found in law books. He says these episodes are worse in the morning and with overcast days. The episodes are diminished by taking St. John's Wort 3 capsules b.i.d., and if he is having a particularly bad day, he may take valerian root 1 tablet q.h.s. as needed.

Mr. Ramstack also complains of memory lapses. When I question him about this further, he says that he really has memory distortions. He says that sometimes his memories are not coherent and that he remembers the wrong date, place or person. For this, he has been taking ginkgo biloba 1 tablet q.d.

Mr. Ramstack also reports poor concentration, especially in the morning. He thinks that this implicates a low level of serotonin in his brain. For this he is taking St. John's Wort. Mr. Ramstack says that he tried taking Prozac and this slightly reduced the number of his seizures, but it made him very apathetic, and one day he could not get himself out of bed shortly after taking this. He says that he has also tried Valium to control his seizures, but it put him to sleep.

Past Medical History: Mr. Ramstack has had hair transplants. A long time ago he had his wisdom teeth removed and his tonsils removed.

Review of Systems: Mr. Ramstack admits to being knocked out twice while in karate class at 21 years of age. He says the longest lapse of consciousness lasted about ten minutes. The other one lasted about 30 seconds. He denies any residual neurological symptoms following these head traumas. He denies any history of febrile convulsions, CNS infections, or other neurologic insults. He says that when he was born his cord was wrapped around his neck but that there were no complications from his delivery. He denies any learning disabilities or dyslexia. He says that he always did very well in school and points out that he did well enough to become a lawyer.

Mr. Ramstack denies any cardiac, pulmonary, gastrointestinal, genitourinary, musculoskeletal, dermatological, endocrinological, hematologic, immunologic, or neurologic symptoms. Mr. Ramstack reports catching "tinea" from an old girlfriend.

Family History: Mr. Ramstack's mother is 82 years of age and has arthritis and cataracts. His father died at 77 years of age from a myocardial infarction. His grandmother had a stroke and a heart attack at 84 years of age.

Social History: Mr. Ramstack graduated from the University of Kansas with degrees in journalism, psychology and Spanish. He then went to work as a journalist for a few years and later went to law school. He graduated in 1987. Currently he works for Business Publishers, Inc. He writes articles on legal issues. He describes himself as a full-time journalist. He says that part-time he practices law on a solo basis. He says that he takes a few Workmens Compensation cases. Mr. Ramstack is single. He says that his medical problems have scared people off and that for this reason he has never married. He denies any alcohol, tobacco or drug abuse. He denies any HIV risk factors.

**Medications:**

Vitamins: Mr. Ramstack takes a number of vitamins but denies taking any megadoses of them. He takes a number of herbal preparations as noted above.

**Allergies:**

He reports a sensitivity to alcohol, but he denies any other known allergies. No known drug allergies.

**Major Findings:**

COMPREHENSIVE SINGLE SYSTEM NEUROLOGICAL EXAMINATION:

Patient: Ramstack, Thomas P                         3                         History # 7-233-39-66

CONSTITUTIONAL: General appearance is well-developed, -nourished, and -groomed, in no acute distress. Sitting blood pressure is 100/80 mm Hg, pulse is regular at approximately 80 bpm, and respirations are unlabored at approximately 20 rpm. The patient is afebrile to touch.

EYES: Ophthalmoscopic exam reveals optic discs of normal size and appearance, without any evidence of papilledema. There are no hemorrhages or exudates. HEAD AND NECK: No palpable cranial defects or evidence of head trauma. No thyromegaly, adenopathy, or masses. RESPIRATORY: Respirations are unlabored. Chest is clear to auscultation. CARDIOVASCULAR: Regular rate and rhythm without murmurs, gallops, or rubs. Carotid pulses have equal and normal amplitude, without bruits. Peripheral pulses are present and symmetric in all extremities. GASTROINTESTINAL: Abdomen is soft, nontender, without organomegaly or masses. EXTREMITIES: No clubbing, cyanosis, or edema. SKIN: No obvious abnormalities without having the patient undress.

MENTAL STATUS: Alert, attentive, and oriented to time, place, and person. Spontaneous speech is articulate and fluent, without word-finding difficulties or paraphasias. Comprehension, repetition, and naming are intact. There is good recall of recent and remote personal and public events. The patient's score on the Mini Mental Status Exam is 30/30.

CRANIAL NERVES: II - VA grossly intact to fine print. Visual fields full to finger counting. III,IV,VI - EOMS full without strabismus or nystagmus. PERRL. No ptosis.

V - facial sensation intact to light touch and cold, symmetric. VII - symmetric expression and strength. VIII - auditory acuity grossly intact and symmetric to tuning fork. IX,X - symmetric pharyngeal movement, palate elevates symmetrically. XI - shoulder shrug symmetric with normal strength. XII - tongue protrudes in the midline, without atrophy or fasciculations.

MUSCULOSKELETAL/MOTOR: Bulk, tone, and strength are normal in both upper and lower extremities. No fasciculations, tremors, tics, dyskinesia or other abnormal movements. No signs of Parkinsonism. REFLEXES: DTRs normal and symmetric in all extremities. No pathological reflexes. COORDINATION: Normal finger-nose-finger and rapid alternating movements in upper extremities. Normal tandem gait. SENSATION: Responds to light touch, cold, and vibratory stimuli in all extremities, bilaterally symmetric. STATION AND GAIT: Ambulatory, with normal gait. Normal heel- and toe-walking. No evidence of postural instability or gait apraxia.

**Assessments:**

Mr. Ramstack presents with a number of neurological complaints which have been relatively static since 17 years of age. Among these, he reports seizure-like episodes. His description of these episodes suggests to me that they might not be epileptic seizures, but rather tics or manifestations of Tourette syndrome. Nonetheless, Mr. Ramstack is convinced that these are seizures and says that several witnesses have told him that it looks like he is having a seizure. For this reason, I think it would be worthwhile recording his episodes with video and EEG to make a definitive diagnosis. To this end, I am scheduling him for admission to the Epilepsy Monitoring Unit. I think it will take no more than two days to make a diagnosis.

Mr. Ramstack has a number of cognitive complaints, including memory distortion and difficulty concentrating. He scored a 30/30 on the mini-mental status examination today. I think it would be worthwhile to run a number of blood tests to rule out treatable causes of dementia and cognitive disturbance.

Mr. Ramstack demonstrates somewhat of a tendency to obsess on his neurological symptoms and seems to have devoted a great deal of effort to explaining them in scientific terms. I reassured Mr. Ramstack that I did not think a serious illness was likely.

**Problems/Diagnosis:**

Patient: Ramstack, Thomas P                    4                    History # 7-233-39-66

1. Episodes of altered awareness. 2. Memory complaints. 3. History of head trauma.

**Procedures and Immunizations:**

**Plans:**

I would like to admit Mr. Ramstack to the Epilepsy Monitoring Unit. At that time we can run the usual tests to rule out treatable causes of dementia and other mental disturbances. At the same time, I will consider whether it is necessary to get an MRI of the brain. He is having an EEG today.

**Medication Changes:**

None.

**CC List:**

Mr. Thomas Ramstack; 816 Easley Street; Apartment 407; Silver Spring, MD 20910; (301) 585-3450;

DICTATED BY: CRONE, NATHAN EARL, M.D./004 D: 05/27/1999 T: 05/28/1999

**Provider**      CRONE, NATHAN                    06/01/1999
              THIS DOCUMENT HAS BEEN ELECTRONICALLY SIGNED

Note: This clinic note provides information pertaining only to the patient's most recent visit. A more detailed medical history is available in the medical record.

| DATE | | 12/20/98 | | | 12/21/99 | | 12/23/99 | | 12/23/97 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **TIME** | | | 2000 | 2400 | | 1800 | 2900 | 1100 | | | |
| **Plans of Care** | | | | | | | | | | | |
| Enteral Tube Feed Standard | | | | | ✓ | | | | | | |
| Fall Prone Standard | | ✓ | | ✓ | → | ✓ | ✓ | → | ✓ | | |
| Oxygen Therapy Standard | | | | | | | | | | | |
| PCA Standard (Specify: _____ ) | | | | | | | | | | | |
| Post-op Standard | | | | | | | | | | | |
| Pressure Ulcer Prevention Standard | | | | | | | | | | | |
| Pulse Oximeter Standard | | | | | | | | | | | |
| Restraint Standard | | | | | | | | | | | |
| Seizure Standard | | ✓ | | ✓ | → | ✓ | ✓ | → | ✓ | | |
| Tracheostomy Standard | | | | | | | | | | | |
| **Additional POC/Referrals:** | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| **RN Initials** | | Hb | ʃ | fY | Hb | ʃ | fV | | | | |

| Date | Time | Assessment/Problem | Admission, Transfer, Transport, Discharge Note/Plans/ Interventions/Response to Interventions/ Progress Towards Expected Outcomes |
|---|---|---|---|
| 12/20/98 | 14 | Pt. admitted for 24° EEG monitoring. Scalp electrodes applied. Describes episodes as "petite mal ē head nodding when concentrating" | Plan: Monitor & follow clinical care _____ Skelmoyer e |
| 12/20 | 2000 | Neuro-pt. had episode #6 @ 1851 this evening consisting of same head dropping activity as earlier | — Continue to Monitor L Hb |
| 12/21 | 0930 | Pt sleeping quietly. Several head drops since admissi Cont 24 h video/EEG monitoring. | Hb |
| 12/21 | 08 | CA ō seizures @ present; EEG electrodes intact; Q ht. Pt informed RN & Tech "ō need to report to rm when blue button pushed per M.D"; will clarify ē team | wcm eeg _____ |
| | 0815 | Spoke ē Dr. Motamedi; R/T "report to rm when button pushed" if seizure activity is noted report, other- wise ō need. | Men. general/t-c activity g happens — Es |
| | 1200 | pushed blue button #times but immediately says "don't bother, small ocurrence" O usual seizure activity | Probes intact _____ |
| 12/21 | 2000 | Last episode now #38 @ | — Continue to assess to |

| Signature/Title | | | | | |
|---|---|---|---|---|---|
| _Tanya Scott_ | | _Belmore_ en | | **FALL RISK ASSESSMENT FACTORS:** Assess the following factors qd and if assessment indicates 1 or more factors, implement FALL PRONE PROTOCOL / safety interventions. | |
| | Heidi Zheng RN | 12 | | History of falls | Surgery - 48 hours postoperative |
| | | | | Decreased mobility/unsteady gait | Bowel Prep/Diarrhea |
| _Kim_ | | | | Active seizure disorder | Syncope/Orthostatic Hypotension |
| | | | | Depression | Visual Impairment |
| Bendela | _AH_ | _co_ | RN | Narcotics/Sedatives | Generalized weakness |
| | | | | Confused | |
| | | | | Urgency/Incontinence/Nocturia | |

| Date | Time | Assessment/Problem | Transfer, Transport, Discharge Note/Plans/Interventions/ Response to Interventions/Progress Towards Expected Outcomes |
|---|---|---|---|
| 12/21 | 2330 | Agree care given based | on assessment by family Heneely — H2 |
| 12/28 | 1100 | Pt d/c from network | |
| | | Pt given discharge | |
| | | instruction, verbalize | |
| | | understanding. Pt to | |
| | | AUz by Crane — Discharge | |
| | | c all belongings — H2 | |

*Plaintiff: Exhibit B*



**THE SECRETARY OF VETERANS AFFAIRS**

**WASHINGTON**

August 2006

Dear Servicemember or Veteran:

I am writing to share with you the most current information regarding the theft of a laptop and a hard drive containing personal identifying data on servicemembers and veterans. You should have received a prior letter from me explaining that an employee took home electronic data from the VA, which he was not authorized to do. The data were downloaded to the hard drive. The employee's home was burglarized and the laptop and hard drive were stolen.

I am pleased to report that both the laptop and the hard drive have been recovered thanks to hardworking law enforcement officials in the local and federal communities. Based on the results of forensic tests, the Federal Bureau of Investigation (FBI) has told us that they are highly confident the sensitive data were not accessed.

Given the FBI's high degree of confidence that the information was not compromised, individual credit monitoring will not be necessary. However, VA has obtained data breach analysis services as a means of further ensuring no misuse of this data occurs in the future. Data breach analysis is used to detect patterns of misuse related to a specific data loss incident. While it is highly unlikely that the data were accessed, data breach analysis will provide back-up assurances.

In addition, we encourage all servicemembers and veterans to be extra vigilant and carefully monitor their financial records. For information on how to protect yourself against identity theft, please visit the Federal Trade Commission's Web site (www.consumer.gov/idtheft) or call 1-877-438-4338.

We apologize for any concern that this situation may have caused you. Although this has been a painful lesson, it has identified gaps in VA's information security practices that we are correcting. I am committed to having our employees adequately trained, with strengthened policies and procedures in place so that this does not happen again. We are thoroughly examining every aspect of our information security program to ensure that veterans' sensitive data are not stolen or compromised. Veterans have a right to expect that VA will take all necessary precautions to safeguard their personal information. I am confident that VA will achieve the highest standards in the realm of cyber and information security, just as it has in the realm of electronic medical records and the delivery of health care to veterans. I appreciate your understanding through this difficult situation.

Even as we have been addressing this issue, VA has been attending to its core mission of caring for veterans – providing excellent health care, benefits, and burials – with no diminution of quality or commitment. For further information, please contact a Veterans Service Representative at 1-800-827-1000.

Sincerely yours,

R. James Nicholson

**08 0658**
**FILED**

APR 15 2008

**Clerk, U.S. District and**
**Bankruptcy Courts**



# *National Personnel Records Center*

Military Personnel Records, *9700 Page Avenue St. Louis, Missouri 63132-5100*

June 16, 2006

*Plaintiff's Exhibit 6*

Thomas Ramstack
816 Easley Street #407
Silver Spring, MD 20910

RE:    **Veteran's Name: RAMSTACK THOMAS**
       **SSN/SN: 513647237**
       **Request Number: 1-1719269601**

Dear Sir or Madam:

Thank you for contacting the National Personnel Records Center. Military personnel records are sent to the National Personnel Records Center from the military service departments after the individual is discharged, retired, or deceased. To date, the record has not been received by this center. We have, therefore, referred your inquiry to the appropriate military service department at the following address:

   U.S. Army Human Resources Command
   ATTN: AHRC-CC-B
   1 Reserve Way
   St. Louis, MO 63132-5200

If you have questions or comments regarding this response, you may contact us at 314-801-0800 or by mail at the address shown in the letterhead above. If you contact us, please reference the Request Number listed above. If you are a veteran, or a deceased veteran's next of kin, please consider submitting your future requests online by visiting us at http://vetrecs.archives.gov.

Sincerely,

**We Value Our
Veterans' Privacy**
*Let us know if we have
failed to protect it.*

EARL J. RAIFORD
Archives Technician (1D)

**08 0658**

# FILED

APR 15 2008

**Clerk, U.S. District and
Bankruptcy Courts**

**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1 RESERVE WAY
ST. LOUIS, MO 63132-5200

August 15, 2007

Veterans Support Branch/dk

SUBJECT: Ramstack, Thomas/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

Mr. Thomas Ramstack
816 Easley Street
Apartment 407
Silver Spring, MD 20910-4579

Dear Veteran:

You have an unanswered inquiry on file at Human Resources Command - St. Louis that is over two years old. Please accept our apology for not providing a response. Unfortunately, there has been a three-fold increase in veteran's inquiries since the year 2003 and resource constraints have prevented us from answering them all.

A special task force has been assembled in house to screen these backlogged requests to determine if they can be worked, based on the information you have submitted and various automated systems in use at this Command. We have determined from these sources that we are unable to answer your request for the following reason(s): We were unable to locate a record of Army service for the individual identified above in our automated systems, based on the social security number provided in your request.

Again, we very much regret having been unable to respond to your original inquiry. Your service to the Army and the United States of America is appreciated and has not been forgotten.

Sincerely,

Jorge M. Fernandez
Colonel, US Army
Director, Personnel
    Actions and Services

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Thomas Philip Ramstack                    88888

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Thomas P. Ramstack (pro se)
816 Easley Street, No. 407
Silver Spring, MD 20910
phone: 301-585-3450

**DEFENDANTS**

U.S. Department of the Army, Central Intelligence
Agency, U.S. Department of State

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

AT

Case: 1:08-cv-00658
Assigned To : Urbina, Ricardo M.
Assign. Date : 4/15/2008
Description: FOIA/Privacy Act

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
    Plaintiff

◉ 2 U.S. Government
    Defendant

○ 3 Federal Question
    (U.S. Government Not a Party)

○ 4 Diversity
    (Indicate Citizenship of
    Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
    Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**          **OR**          **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
    defendant
☐ 871 IRS-Third Party 26
    USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
    of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
    Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
    Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
    Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
    Exchange
☐ 875 Customer Challenge 12 USC
    3410
☐ 900 Appeal of fee determination
    under equal access to Justice
☐ 950 Constitutionality of State
    Statutes
☐ 890 Other Statutory Actions (if
    not administrative agency
    review or Privacy Act

⑨

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | ⊗ **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

5 U.S.C 552 Freedom of Information Act and Privacy Act of 1974 for failure to provide accurate military records

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ [_____]   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE   April 14, 2008    SIGNATURE OF ATTORNEY OF RECORD   _Lon Armstack_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.