# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THOMAS PHILIP RAMSTACK,　　　　　:

　　　　　　　　　　:

　　　　　　Plaintiff,　　　　　:　　Civil Action No.:　　08-0658 (RMU)

　　　　　　　　　　:

　　　　　　v.　　　　　　:　　Document Nos.:　　8, 9, 15

　　　　　　　　　　:

DEPARTMENT OF THE ARMY *et al.*,　　:

　　　　　　　　　　:

　　　　　　Defendants.　　　　:

## <u>MEMORANDUM OPINION</u>

### Granting in Part and Denying in Part the Defendants' Motion to Dismiss; Granting in Part and Denying in Part the Defendants' Motion for Partial Summary Judgment; Denying the Plaintiff's Cross-Motion for Summary Judgment

## I. INTRODUCTION

This case comes before the court on the defendants' motion to dismiss and for partial

summary judgment, and the plaintiff's cross-motion for summary judgment.  The *pro se* plaintiff,

Thomas Ramstack, brings suit against multiple defendants[1] under the Freedom of Information

---

[1]　　The plaintiff's complaint names the following defendants: the U.S. Department of the Army ("Army"); the Central Intelligence Agency ("CIA"); the U.S. Department of State ("DOS"); the Office of Staff Judge Advocate in the Military District of Washington; the Military District of Washington; the Legal Administrator of the CIA; Christopher Riche, Executive Director, Office of the Legal Advisor, DOS; the U.S. Attorney General; and the U.S. Attorney for the District of Columbia.  Compl. at 1-2.  FOIA claims may only be filed against agencies, 5 U.S.C. § 552(a), and the term "agency . . . includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . , or any independent regulatory agency," *id.* § 552(f)(1).

Because FOIA "concern[s] the obligations of agencies as distinct from individual employees in those agencies," the court dismisses the Legal Administrator of the CIA and Christopher Riche. *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (affirming the district court's dismissal of individual defendants in a FOIA and Privacy Act action); *see also Canadian Javelin, Ltd. v. Sec. & Exch. Comm'n*, 501 F. Supp. 898, 904 (D.D.C. 1980) (holding that suits under FOIA "may be brought only against an 'agency' of the federal government and not against any individual government employee or officer").  The court also dismisses the Office of Staff Judge Advocate in the Military District of Washington and the Military District of Washington because they are subdivisions of the U.S. Army.  *Schwarz v. U.S. Gen. Accounting Office*, 2002 WL

Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, alleging that they improperly withheld records and failed to conduct adequate searches.  The defendants, specifically the U.S. Department of the Army ("Army"), the Central Intelligence Agency ("CIA"), and the U.S. Department of State ("DOS"), move to dismiss, contending that the plaintiff failed to exhaust his administrative remedies.  The defendants also assert that they conducted reasonable searches in response to the plaintiff's requests.  Because the plaintiff failed to exhaust his administrative remedies with respect to certain requests, the court grants in part and denies in part the defendants' motion to dismiss.  Furthermore, because the agencies conducted adequate searches as to the plaintiff's remaining requests, the court grants the defendants' motion for partial summary judgment as to those claims and denies the plaintiff's cross-motion for summary judgment.

## II.  BACKGROUND

### A.  Factual History

Beginning in the early 1980s and continuing until 2008, the plaintiff made thirteen FOIA requests for documents with the Army, the CIA and the DOS to gain a better understanding of his service in the Army, especially with respect to brain damage he allegedly sustained during his service.  Compl. at 3.  The plaintiff maintains that he "appears to have suffered from military service-related injuries, including poisoning that left him with toxic encephalopathy," and that

---

1050444, at *1 (D.C. Cir. Mar. 29, 2002) (affirming the district court's dismissal of FOIA claims against "all subdivisions of agencies").

As to the U.S. Attorney General and the U.S. Attorney for the District of Columbia, the plaintiff has failed to allege that he made any requests to these defendants.  Thus, the court *sua sponte* dismisses these defendants.  *See Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 968 n.29 (D.C. Cir. 1976) (stating that the district court's authority "to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power'").

his "memory lapses and distortions [have] left him unable to remember the exact nature of his service to the U.S. Army or the cause of his brain damage." *Id.* The plaintiff also states that his brain damage has "interfered extensively with his employment, social life, income and personal well-being." *Id.*

### 1. Requests to the DOS

In March and June of 1987, the plaintiff made two Privacy Act requests to the DOS. Defs.' Mot., Ex. E ("Grafeld Decl.") ¶ 4.[2]  Although the files containing the documentation of the searches performed in response to his requests were destroyed pursuant to DOS regulations in 1994 and 1995, available data in the DOS tracking systems indicate that searches conducted in response to each request yielded no responsive records. *Id.* On January 5, 2008, the plaintiff made a third request[3] to the DOS for "all records or documents relevant to his service in the U.S. military or service to any other government agency." *Id.* ¶ 5. In response, the DOS notified the plaintiff by letter that he was required to provide a more detailed description of the records requested and include a notarized signature or a signature under penalty of perjury pursuant to 22 C.F.R. § 171.32(a)-(b).[4]  *Id.* ¶¶ 5-7. After the plaintiff failed to provide the requested materials, the DOS closed his 2008 request pursuant to Department regulations. *Id.* ¶ 11.

---

[2]  Because the plaintiff's submissions do not detail his requests and fail to contradict the defendants' statement of facts, the court accepts as true the factual assertions contained in the defendants' affidavits. *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992) (stating that "any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion").

[3]  Though the plaintiff submitted his request under FOIA, the DOS "considered it a Privacy Act request because it sought records about the requester himself." Grafeld Decl. ¶ 6 & Attach. 1.

[4]  22 C.F.R. § 171.32(a)-(b) states in relevant part: "In certain instances, it may be necessary for the Department to request additional information from the requester, either to ensure a full search, or to ensure that a record retrieved does in fact pertain to the individual . . . . The request must be signed, and the requester's signature must be either notarized or submitted under penalty of perjury as a substitute for notarization."

### 2. Requests to the CIA

The plaintiff also submitted five FOIA requests to the CIA over nearly two decades. Defs.' Mot., Ex. D ("Nelson Decl.") ¶¶ 15, 16, 19 n.4. In 1988, the plaintiff filed a request for records, but no responsive documents were located. *Id.* ¶ 19 n.4. The file containing the correspondence regarding the searches performed in response to the 1988 request has since been destroyed pursuant to the CIA's records maintenance procedure. *Id.* The plaintiff then filed a request for documents containing information about himself on December 14, 1992. *Id.* ¶ 15. The CIA processed the request under FOIA and the Privacy Act and notified the plaintiff on February 23, 1993 that after conducting thorough searches in its databases, it was unable to locate any responsive records. *Id.* & Attach. 2.

The plaintiff submitted two more FOIA requests for information or records about himself in 2003 – one on July 6 and another on December 8. Nelson Decl. ¶¶ 16-18. After receiving the plaintiff's July 6 request, the CIA informed him that CIA regulations require that he provide a notarized statement containing additional personal and contact information within forty-five days. *Id.* ¶ 17. When the CIA did not receive a response from the plaintiff within the allotted time, it closed his request. *Id.* Regarding his December 8 request, the CIA again conducted a search that yielded no responsive documents. *Id.* ¶¶ 18-19. The plaintiff filed an administrative appeal, and the CIA, after confirming that it could not locate any responsive records, denied the appeal. *Id.* ¶¶ 22-25.

On February 27, 2007, the plaintiff submitted his final request to the CIA for "copies of all information regarding himself from June 1973 to the present." *Id.* ¶ 26. The CIA conducted an updated search for relevant documents, but again failed to locate any responsive records. *Id.* ¶¶ 26-28. The plaintiff appealed, and in June 2007, the CIA informed the plaintiff by letter that

it had considered his appeal, but had been unable to locate any responsive documents. *Id.* ¶¶ 31-33.

### 3. Requests to the Army

On July 11, 2006, the plaintiff filed his first request to the Army for records pertaining to his service in the early 1970s. Defs.' Mot., Ex. B ("Tatum Decl.") ¶ 8. After conducting searches in five databases, however, Army personnel were unable to locate any records of the plaintiff's service in the Army. *Id.* ¶¶ 11-19. The plaintiff made four almost identical FOIA requests between January and February 2008 to the Department of the Army Freedom of Information Act ("DA FOIA") office for records related to his military service, including documents pertaining to any injuries sustained during service. Defs.' Mot., Ex. C ("Hargrove Decl.") ¶¶ 7-10 & Attachs. 1-4. The plaintiff made two of the four requests on January 5, 2008 – one e-mail request and one written request. *Id.* ¶¶ 7-8. Personnel at the DA FOIA office sent the plaintiff an e-mail on January 10, 2008 informing him that their office did not maintain Army records. *Id.* ¶ 11. The e-mail also provided him with information on how to contact the National Personnel Records Center, where the Army stores records of former active duty personnel. *Id.* Because the plaintiff's other two requests, made on February 21 and 23, 2008 were nearly identical to the January 5, 2008 requests, the DA FOIA personnel re-sent their January 10, 2008 e-mail response to the plaintiff. *Id.* ¶ 12.

In August 2006, the plaintiff received a letter from the U.S. Department of Veterans Affairs ("Veterans Affairs"), warning him of a possible computer security breach that could affect him and other veterans. Compl., Ex. B. The plaintiff alleges that when he spoke with the clerk at Veterans Affairs, the clerk looked up his records using his social security number and determined that he had been enlisted in the Army from November 1973 to November 1975.

Compl. at 7.  He recounts that when he asked the clerk how he could verify the information

regarding his service, the clerk referred him to the Veterans Affairs headquarters in Philadelphia.

*Id.* at 8.  When the plaintiff contacted the Philadelphia headquarters, the clerk there confirmed

that he had served in the Army between November 1973 and November 1975.  *Id.*  The plaintiff

then filed a VA Form 21-526 (Veteran's Application for Compensation) with the Veterans

Administration ("VA"), presumably seeking recovery for injuries incurred during his alleged

service.  *Id.*  On October 11, 2006, the VA responded, requesting additional information,

including "evidence to support [his] claim of being a former prisoner of war"; "statements from

fellow prisoners of war, service persons, veterans, doctors or other persons who knew of [his]

disabilities in service or shortly after"; and "dates of medical treatment during service."  *Id.*  The

plaintiff failed to provide the VA with the requested information, claiming to suffer from toxic

encephalopathy, a type of brain damage resulting from exposure to toxins, the symptoms of

which include memory lapses, sleep disorder, seizures, fatigue and spontaneous utterances.  *Id.* at

7, 8.  After the VA denied his claim for benefits, the plaintiff appealed.  *Id.* at 8.  On August 15,

2007, the VA denied the plaintiff's appeal.  *Id.*

### B.  Procedural History

On April 15, 2008, the plaintiff filed suit alleging that the Army, the CIA and the DOS

improperly withheld information he requested and failed to conduct adequate searches.  Compl.

at 2.  Notably, the VA is not a defendant in this case, and the plaintiff does not allege that the VA

deprived him of any rights.  *See generally id.*  Based on the factual information provided by the

defendants, the court interprets the plaintiff's claims arising from his requests as follows: the

plaintiff filed three requests for records with the DOS in March and June of 1987 and again on

January 5, 2008 (Claims 1-3 respectively); he submitted one request for records to the CIA in

1988, and one each on December 14, 1992, July 6, 2003, December 8, 2003, and February 20, 2007 (Claims 4-8 respectively); and he filed five requests for documents with the Army via a letter on July 11, 2006, a letter on January 5, 2008, an e-mail on January 5, 2008, and two letters dated February 21 and 23, 2008 (Claims 9-13 respectively).

On July 25, 2008, the defendants moved to dismiss the plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted, and for partial summary judgment. Defs.' Mot. at 1-2. In response, the plaintiff filed an opposition and cross-motion for summary judgment on August 7, 2008, contending that the defendants had not conducted an adequate search in response to his requests. Pl.'s Opp'n to Defs.' Mot. to Dismiss and Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot.") at 2. On August 15, 2008, the defendants filed a reply and opposition. Defs.' Reply to Pl.'s Opp'n & Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Defs.' Reply") at 2. The plaintiff then filed a reply to the defendants' opposition. Pl.'s Reply to Defs.' Reply ("Pl.'s Reply") at 2. The court now addresses the parties' motions.

## III.  ANALYSIS

### A.  The Court Grants the Defendants' Motion to Dismiss Claims 3 and 6 and Denies the Defendants' Motion to Dismiss Claims 1, 2, 4 and 5

#### 1.  Legal Standard for FOIA Exhaustion of Remedies

"Exhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. U.S. Dep't of Army* ("*Oglesby I*"), 920 F.2d 57, 61 (D.C. Cir. 1990)). In the FOIA context, the exhaustion requirement is a prudential consideration, not a jurisdictional prerequisite, and therefore a plaintiff's failure to exhaust does not deprive the court

of subject-matter jurisdiction.  *Id.*  But as a prudential consideration, the exhaustion requirement

may still bar judicial review if both (1) the administrative scheme at issue and (2) the purposes of

exhaustion support such a bar.  *Id.*  (citing *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir.

2003)).  With regard to the first factor, the D.C. Circuit has concluded that FOIA's

administrative scheme supports barring judicial review.[5]  *Id.* (citing *Hidalgo*, 344 F.3d at 1259).

As for the second factor, courts look to see whether barring judicial review would "prevent[]

premature interference with agency processes, so that the agency may function efficiently and so

that it may have an opportunity to correct its own errors, to afford the parties and the courts the

benefit of its experience and expertise, and to compile a record which is adequate for judicial

review."  *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see also Hidalgo*, 344 F.3d at 1259

(applying the *Weinberger* description of the purpose of exhaustion in the FOIA context).

     If the agency fails to answer the request within 20 days, FOIA deems the requester to

have constructively exhausted administrative remedies and permits immediate judicial review.  5

U.S.C. § 552(a)(6)(C); *Judicial Watch, Inc. v. Rossotti* ("*Judicial Watch I*"), 326 F.3d 1309,

1310 (D.C. Cir. 2003) (citing *Oglesby I*, 920 F.2d at 64-65).  That said, "[i]f the agency responds

to the request after the twenty-day statutory window, but before the requester files suit, the

administrative exhaustion requirement still applies."  *Judicial Watch I*, 326 F.3d at 1310.

---

[5]     Specifically, the court has stated that

> [t]he FOIA expressly requires that an agency receiving a request for information (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal . . . .  If the denial of the request is upheld on appeal, the agency must notify the person making such request of the provisions for judicial review of that determination . . . .  As we have previously concluded, this statutory scheme requires each requestor to exhaust administrative remedies.

> *Hidalgo*, 344 F.3d at 1259 (internal quotations and citations omitted).

Moreover, courts have held that only a valid FOIA request can trigger an agency's FOIA obligations, and that "failure to file a perfected request therefore constitutes failure to exhaust administrative remedies." *Dale v. I.R.S.*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) (citing 5 U.S.C. § 552(a)(3) and 26 C.F.R. § 601.702(c)(5)); *see also Judicial Watch I*, 326 F.3d at 1311-12 (basing its analysis on the defendant's argument that the plaintiff had not constructively exhausted because the non-conforming FOIA request could not be considered "received" and thus could not trigger the 20-day limit); *accord Church of Scientology v. I.R.S.*, 792 F.2d 146, 150 (D.C. Cir. 1986) (noting that FOIA requires "requests [to] be made in accordance with published rules").

## 2. The Plaintiff Failed to Exhaust His Administrative Remedies for Claims 3 and 6

### a. Claim 3

The DOS argues that the plaintiff failed to exhaust his administrative remedies regarding his January 5, 2008 request for documents by not sending certain information that it requested pursuant to regulations governing Privacy Act requests. Defs.' Mot. at 8-10 (citing 22 C.F.R. § 171.32(a)-(b)). Specifically, the DOS asserts that after receiving the plaintiff's January 5, 2008 request, it notified him by letter on February 19, 2008, that his request needed to be notarized or submitted under penalty of perjury pursuant to 22 C.F.R. § 171.32(a)-(b). *Id.* at 8-9. The DOS also contends that it informed the plaintiff that, pursuant to § 171.32(a), he needed to submit additional information including specific dates of service, security clearances and any other information that could assist its search for records. Grafeld Decl. ¶ 7. The plaintiff does not contest that he failed to send the requested information to the DOS and thereby failed to perfect his 2008 request. *See* Pl.'s Cross-Mot. at 6. Accordingly, the court concludes that the plaintiff has failed to exhaust his administrative remedies, and the court grants the defendants' motion to

dismiss this claim.  *See Dale*, 238 F. Supp. 2d at 103 (holding that a "failure to file a perfected

request [] constitutes failure to exhaust administrative remedies" (internal citations omitted)).

### b.  Claim 6

The CIA argues that the court should dismiss the plaintiff's claim relating to his July 6,

2003 request because the plaintiff failed to exhaust his administrative remedies when he did not

send the CIA materials it had requested pursuant to CIA regulations.[6]  Defs.' Mot. at 9-10.  The

plaintiff does not contest that he failed to exhaust his administrative remedies with respect to this

claim.  Pl.'s Cross-Mot. at 2, 6 (asserting that his "failure to appeal the most recent requests" to

the CIA has no bearing on his earlier claims against the defendants).

In response to the plaintiff's July 6, 2003 request, the CIA informed him in a letter dated

July 11, 2003 that pursuant to CIA regulations, he was required to provide a notarized statement

containing certain personal information including the plaintiff's legal name, address, and date

and place of birth.  Defs.' Mot. at 9-10.  After the plaintiff failed to provide the requested

materials, the CIA administratively closed his request.  *Id.* at 10.  Because the plaintiff has not

perfected his request and thereby exhausted his administrative remedies, the court grants the

defendants' motion to dismiss Claim 6.  *See Dale*, 238 F. Supp. 2d at 103.

### 3.  The Defendants Failed to Demonstrate that the Plaintiff Did Not Exhaust His Administrative Remedies for Claims 1, 2, 4 and 5

The defendants assert, and the plaintiff does not dispute, that the files regarding the

plaintiff's 1987 Privacy Act requests to the DOS (Claims 1-2) were destroyed in 1994 and 1995.

Grafeld Decl. ¶ 4.  Available data in the DOS system indicates that the DOS conducted searches

of the Central Foreign Policy Records, a principal DOS records system, and of the Office of

Passport Services, and that no responsive records were found.  *Id.*  The defendants provide no

---

[6]     32 C.F.R. § 1901.13 states that "[i]f the Agency determines that [the information provided by the requester] is not sufficient, the Agency may request additional or clarifying information."

further indication as to what, if any, action was taken on the part of the defendants or the plaintiff subsequent to the initial search. *See id.* (stating that "no additional information is available" regarding this claim).

Additionally, with respect to Claim 4, arising from the plaintiff's 1988 request to the CIA, the defendants again assert, without dispute, that the CIA destroyed the file containing the correspondence regarding this request pursuant to applicable maintenance procedures. Nelson Decl. ¶ 19 n.4. The defendants further indicate that the CIA was unable to locate any responsive documents with respect to the plaintiff's request, but offer no additional information regarding this claim. *Id.* The plaintiff also filed a request with the CIA on December 14, 1992, the basis for Claim 5, and the CIA notified him on February 23, 1993 that after conducting thorough searches in its databases,[7] it had been unable to locate any responsive records. *Id.* ¶ 15 & Attach. 2. The defendants do not state whether the plaintiff followed up his requests through the administrative appellate process. *See* Nelson Decl. ¶ 15.

Because the failure to exhaust administrative remedies is considered an affirmative defense, "the defendant[s] bear[] the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). If the defendant meets this burden, then the plaintiff "bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Id.* The declaration of Margaret P. Grafeld, Information and Privacy Coordinator and Director of the Office of Information Programs and Services for the DOS ("the Grafeld declaration"), explains that the DOS "found records of having received and processed two Privacy Act requests" from the plaintiff in 1987 (Claims 1-2), but fails to indicate if the DOS provided the plaintiff with a response or final decision regarding his claims, and notes that "no additional

---

[7] The defendants' motion for summary judgment fails to present argument on whether the searches pursuant to Claims 1, 2, 4 and 5 were adequate and reasonable.

information is available to further verify this information."  Grafeld Decl. ¶ 4.  Additionally, the

declaration of Delores Nelson, Information and Privacy Coordinator in the Office of the Chief

Information Officer of the CIA ("the Nelson declaration"), fails to provide any information

regarding the CIA's final adjudication of the plaintiff's 1988 and December 1992 claims (Claims

4-5).  Thus, without additional information indicating that the plaintiff did or did not exhaust his

administrative remedies, the defendants fall short of satisfying their burden, and the court denies

without prejudice their motion to dismiss Claims 1, 2, 4 and 5.[8]  *Compare Bowden*, 106 F.3d at

437 (stating that the defendant met his initial burden because "the pleadings and undisputed

documents in the record" demonstrated that the plaintiff had not timely exhausted his remedies)

*with Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (holding that the suit was not subject to

dismissal for failure to exhaust administrative remedies because "the defendant failed to allege

facts" indicating the plaintiff's failure to exhaust).

### B. The Court Grants in Part and Denies in Part the Defendants' Motion for Partial Summary Judgment

#### 1. Legal Standard for Summary Judgment in FOIA Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[8]     The defendants argue that even assuming the plaintiff has exhausted his administrative remedies, the claims arising from these requests are barred by the statute of limitations under 28 U.S.C. § 2401.  Defs.' Mot. at 8.  Under FOIA, the statute of limitations begins to run when a party has exhausted his administrative remedies.  *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56-57 (D.C. Cir. 1987).  Because the defendants have failed to provide the court with information regarding when, or if, the DOS and the CIA provided the plaintiff with administrative decisions with respect to the claims arising from his 1987, 1988 and 1992 requests (Claims 1, 2, 4 and 5), the court cannot determine when the statute of limitations began to run.  Accordingly, without more information, the court rejects the defendants' argument that if the plaintiff had exhausted his administrative remedies, the statute of limitations would bar Claims 1, 2, 4 and 5.  *See id.* at 59 (holding that the statute of limitations barred the plaintiff's claim because the court determined that he exhausted his administrative remedies more than seven years before he filed suit); *see also Porter v. CIA*, 579 F. Supp. 2d 121, 127 (D.D.C. 2008) (holding that the plaintiff's claim filed more than seven years after his appeal was denied was barred by the statute of limitations).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure.  5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).  FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information.  5 U.S.C. § 552(a)(4)(B).  In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA and that the agency has adequately segregated exempt from non-exempt materials.  5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  An agency may meet its burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the reason for the

withholding.  *Summers*, 140 F.3d at 1080; *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir.

1987); *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn*

index").

## 2.  Legal Standard for FOIA Adequacy of Agency Search

"A requester dissatisfied with the agency's response that no records have been found may

challenge the adequacy of the agency's search by filing a lawsuit in the district court after

exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

326 (D.C. Cir. 1999).  To prevail on summary judgment, "the agency must demonstrate beyond

material doubt that its search was reasonably calculated to uncover all relevant documents."

*Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)

(internal quotations and citations omitted).  An agency must search for documents in good faith,

using methods that are reasonably expected to produce the requested information.  *Valencia-*

*Lucena*, 180 F.3d at 326 (citing *Oglesby I*, 920 F.2d at 68).  The principal issue is not whether

the agency's search uncovered responsive documents, but whether the search was reasonable.

*Oglesby I*, 920 F.2d at 67 n.13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir.

1986)); *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).  The agency need not search every

record in the system or conduct a perfect search.  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*,

926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol*, 790 F.2d at 952, 956.  Nor need the agency

produce a document if "the agency is no longer in possession of the document[] for a reason that

is not itself suspect."  *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information

in affidavits for the court to determine, based on the facts of the case, that the search was

reasonable.  *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby I*, 920 F.2d at 68).  While an

agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

### 3. The Court Grants the Defendants' Motion for Partial Summary Judgment with Respect to Claims 7-9

The defendants proffer that with respect to the plaintiff's claims arising from his December 8, 2003 and February 20, 2007 FOIA requests to the CIA (Claims 7-8), and his July 11, 2006 request for his service records to the Army (Claim 9), they conducted adequate searches for records using search methods that were reasonably expected to produce responsive documents, but found no records responsive to the plaintiff's request. Defs.' Mot. at 13. The plaintiff retorts that the defendants have failed to show "beyond material doubt" that they conducted searches reasonably expected to recover responsive records. Pl.'s Cross-Mot. at 9. The plaintiff maintains that the Army's search with respect to Claim 9 was inadequate because the Army failed to search VA records in Baltimore or Philadelphia. Compl. at 10. The plaintiff also alleges that the Army failed to adequately describe its search. *Id.* Though the plaintiff acknowledges that the CIA and the Army "have conducted a search of databases traditionally used to find information about military service," he argues that the requested documents are not likely to be found in traditional government databases because of "political impropriety" and suggests that the defendants inquire about his military service with the VA and former Army General and Secretary of State Alexander Haig. *Id.* at 6-7. The defendants respond that these

amount to mere "speculations and hypothetical scenarios" and are "insufficient to overcome the good faith declarations of agencies responding to a challenge to the adequacy of a search." Defs.' Reply at 2-3.

### a. The Defendants' Affidavits are Sufficient to Show that the Defendants Conducted Adequate Searches

The court may rely on the Nelson[9] and Tatum[10] declarations in determining whether the defendants conducted reasonable searches for documents responsive to the plaintiff's FOIA requests. *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (holding that the district court may rely on agency affidavits as long as they are "relatively detailed[,] . . . nonconclusory and submitted in good faith"). The Nelson declaration explains that the CIA searched records systems that it determined were most reasonably calculated to contain documents responsive to the plaintiff's requests (Claims 7-8). Nelson Decl. ¶¶ 20, 27-28. Specifically, the CIA searched the National Clandestine Service records system and the Directorate of Support, Office of Security records system. *Id.* ¶ 20. The CIA conducted its searches for relevant records using variations of the plaintiff's name, as well as his social security number and approximate date of birth. *Id.*

Similarly, the Tatum declaration explains that, with respect to Claim 9, the Army conducted searches in five electronic databases using the name and social security number provided in the plaintiff's request for records. *Id.* ¶¶ 11-17. The databases searched include: the Interactive Permanent Electronic Management Systems, a database containing military personnel

---

[9]     Delores Nelson is Information and Privacy Coordinator in the Office of the Chief Information Officer of the CIA. Nelson Decl. ¶ 1. She has served with the CIA for twenty-nine years. *Id.* ¶ 2.

[10]    Elizabeth Tatum has served with the U.S. government for forty years and has been Chief, Veterans Support Branch, Program Manage for twenty-six years. Tatum Decl. ¶¶ 4-5. She is "responsible for managing requests for service records made by U.S. Army veterans." *Id.* ¶ 5.

records entered beginning in October 2002; the National Personnel Records Center's Electronic

Military Records database, which contains records pertaining to service occurring before 2002;

the Defense Manpower Data Center, a database that contains data that may have been lost by

other databases or otherwise added at a later date; the Beneficiary Individual Records Locator

System, a database that locates a requester's DD-214 form, which is used to establish a veteran's

benefits claim; and the Defense Finance Accounting Service, a database that stores records for

leave and earnings for discharged or retired service members.  *Id.*  The Tatum declaration

indicates that each of the five databases failed to return any records of service for the plaintiff.

*Id.* ¶ 18.

      The court examines searches to determine whether they were "reasonably calculated to

uncover all relevant documents," *Nation Magazine*, 71 F.3d at 890, bearing in mind that the

defendants are not required to search all of their records or conduct a perfect search, *SafeCard*

*Servs.*, 926 F.2d at 1201.  As the Nelson declaration explains, the CIA searched the two records

systems it considered most likely to discover records responsive to the plaintiff's request.

Nelson Decl. ¶ 20.  Likewise, the Tatum declaration indicates that the Army conducted searches

in five databases available to it that were reasonably expected to locate responsive documents

pertaining to the plaintiff's request for records related to his service with the Army.  Tatum Decl.

¶ 8, 11.  Both the Nelson and Tatum declarations provide more than a "generalized assertion"

that the agencies conducted a reasonable search in that they set forth detailed explanations of the

databases and search terms used in the CIA and the Army searches.  *See Church of Scientology*

*v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986) (holding that the agency did not meet its "burden of

justifying" its searches when it made only a "generalized assertion that it had examined the

appropriate subject files").  The declarations indicate that the CIA and the Army each conducted

thorough searches in more than a single central records database.  *See Oglesby v. U.S. Dep't of Army* ("*Oglesby II*"), 79 F.3d 1172, 1186 (D.C. Cir. 1996) (determining that the agency's decision to search only one of three categories of files was sufficient and reasonably calculated to uncover all responsive records); *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 22 (D.D.C. 2002) (concluding that "[i]f the FBI believes that a search of its [central records system] is sufficient, it need not go further").

### b.  The Defendants Properly Confined Their Searches to Central Databases

In further response to the plaintiff's argument that the defendants failed to conduct searches reasonably expected to recover responsive records, Pl.'s Cross-Mot. at 9, the court notes that when a FOIA request "does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return."  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).  The plaintiff's requests did not specify particular files, databases or records collections to be searched, but instead asked generally for documents related to his purported service.  *See, e.g.*, Nelson Decl. ¶ 16 & Attach. 3 (stating that the plaintiff's July 6, 2003 request was for "information or records on [himself], particularly as it relates to any international disputes in which [he] was involved, beginning in 1973 and continuing to the present" from the CIA); Grafeld Decl. ¶ 5 & Attach. 1 (noting that the plaintiff's January 5, 2008 request to the DOS was for "all records or documents relevant to [his] service in the U.S. military or service to any other government agency from November 1973 through the present").  Because the plaintiff did not specify particular databases to be searched, the defendants' searches were sufficient.  *See Campbell*, 164 F.3d at 28 (holding that the FBI is not required to search outside its central

records system "when the FOIA requester does not expressly ask it to do so" and additional searches are not likely to yield results).

With respect to the plaintiff's argument that the Army should have searched the VA records in Baltimore or Philadelphia, Compl. at 10, and his recommendation that the defendants question former Attorney General and Secretary of State Alexander Haig, Pl.'s Cross-Mot. at 7, the court points out that the plaintiff failed to direct the defendants to these particular sources of information in his FOIA requests to the Army, *see Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir 1996) (holding that agencies are neither "required to speculate about potential leads . . . [nor] obliged to look beyond the four corners of the request for leads to the location of responsive documents").  Because the plaintiff did "not specify the locations in which [the] agenc[ies] should search," the defendants acted within their discretion to confine the searches to databases they reasonably expected to recover responsive records.  *Campbell*, 164 F.3d at 28.

In sum, with no contradictory evidence, the court accords a presumption of good faith to the affidavits provided by the Army and the CIA concerning the reasonableness of their searches. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) (noting that if there is not more than "a scintilla of evidence . . . that tends to impugn the integrity" of the government document, the court will "generally accord Government records and official conduct a presumption of legitimacy").  Therefore, the court grants the defendants' motion for partial summary judgment with respect to Claims 7-9, arising from the plaintiff's requests for documents from the CIA and Army dated December 8, 2003, February 20, 2007, and July 11, 2006.

### 4.  The Court Denies the Defendants' Motion for Summary Judgment with Respect to Claims 10-13

The defendants acknowledge that the plaintiff submitted four requests for information about himself to the DA FOIA office in January and February 2008 (Claims 10-13).  Hargrove

Decl. ¶¶ 7-10.  In response to these four requests, the Chief of the DA FOIA office twice advised the plaintiff via e-mail that his office did not maintain any Army records and provided the plaintiff with the contact information for the National Personnel Records Center ("NPRC"), the personnel office that maintains "[a]ll records of formerly active duty military personnel . . . ." *Id.* ¶ 4 & Attachs. 5, 6.  The plaintiff does not contest these assertions.

Pursuant to 32 C.F.R. § 518 Appendix B(a), individuals seeking records from the Army under FOIA are instructed to "[c]ontact the DA FOIA/PA office, to coordinate the referral of requests if there is uncertainty as to which Army activity may have records."[11]  The defendants, however, fail to cite a single case or statute in support of their argument that DA FOIA adequately responded to the plaintiff's requests.  *See* Defs.' Mot. at 13.  Moreover, the Army does not explain how the referral procedure satisfies its "responsibility for processing the request."  *Cf. McGehee v. CIA*, 697 F.3d 1095, 1110 (D.C. Cir. 1983) (stating that an agency "cannot simply refuse to act on the ground that the documents originated elsewhere").  Accordingly, the court denies without prejudice the defendants' motion for summary judgment as to Claims 10-13.  *Id.* (opining that "the more serious the [] impediments to obtaining records or the longer the delay in their release, the more substantial must be the offsetting gains offered by the agency to establish the reasonableness of its [referral] system[,] [and noting that] [a]t the extreme, a procedure that, in practice, imposed very large burdens on requesters (*e.g.*, by compelling them to . . . submit separate requests to a number of independent bodies) or that resulted in very long delays would be highly difficult to justify").

---

[11]     An "Army activity" is defined as "[a] specific area of organizational or functional responsibility within the DA, authorized to receive and act independently on FOIA requests."  32 C.F.R. § 518.7(c).

### IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants'

motion to dismiss, grants in part and denies in part the defendants' motion for partial summary

judgment and denies the plaintiff's cross-motion for summary judgment.  An Order consistent

with this Memorandum Opinion is separately and contemporaneously issued on this 24th day of

March, 2009.


RICARDO M. URBINA
United States District Judge