UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THOMAS RAMSTACK, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 08-0658 (RMU) |
| | : | |
| v. | : | Re Document Nos.: 23, 25 |
| | : | |
| DEPARTMENT OF THE ARMY *et al.,* | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' RENEWED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT; DENYING THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendants' renewed motion to dismiss the complaint in part and for summary judgment on the remaining claims, and the plaintiff's cross-motion for summary judgment. The *pro se* plaintiff brings suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, alleging that the defendants improperly withheld records and failed to conduct adequate searches in response to his numerous requests for records. The court previously dismissed a number of the plaintiff's claims and granted summary judgment to the defendants on several others. Defendant the U.S. Department of State ("DOS") now asks the court to dismiss all of the remaining claims against it on the grounds that they are time-barred. Defendants the U.S. Department of the Army ("Army") and the Central Intelligence Agency ("CIA") contend that they are entitled to summary judgment on the plaintiff's remaining claims against them because they conducted adequate searches in response to the plaintiff's requests and uncovered no responsive documents. For the

reasons discussed below, the court grants the defendants' motion in its entirety, and resolves all of the plaintiffs' claims in favor of the defendants.

## II. FACTUAL AND PROCEDURAL BACKGROUND

By way of brief background,[1] the plaintiff contends that he served in the U.S. Army from 1973 to 1975 and participated in a covert, Cold War confrontation with the Soviet military that took place in Spain. *See* Compl. ¶ 4.1. The plaintiff alleges that the injuries he suffered during that confrontation resulted in brain damage, which has caused "memory lapses and distortions [leaving] him unable to remember the exact nature of his service to the U.S. Army or the cause of his brain damage." *Id.* ¶ 4.4.

Beginning in the early 1980s and continuing through 2008, the plaintiff made thirteen FOIA requests for records to the DOS, the CIA and the Army in an attempt to obtain records regarding his alleged military service. *See* Mem. Op. (Mar. 24, 2009) at 2-6. For ease of reference, the court, in a prior decision, labelled the plaintiff's claims as follows: Claims 1 through 3 concerned his requests to the DOS in March 1987, June 1987 and January 2008 respectively; Claims 4 through 8 concerned his requests to the CIA in 1988, December 1992, July 2003 and December 2003 respectively; and Claims 9 through 13 concerned his requests to the Army by letter in July 2006, by letter in January 2008, by e-mail in January 2008, by letter on February 21, 2008 and by letter on February 23, 2008 respectively. *See id.* at 6-7.

On March 24, 2009, the court granted in part and denied in part the defendants' motion to dismiss and for summary judgment and denied the plaintiff's motion for summary judgment. *See generally id.* Specifically, the court granted the defendants' motion to dismiss Claims 3 and

---

[1] A more detailed factual and procedural history of this matter may be found in a prior decision of this court. *See* Mem. Op. (Mar. 24, 2009) at 2-6.

6 because the plaintiff had not exhausted his administrative remedies with respect to those requests. *Id.* at 9-10. The court, however, denied without prejudice the defendants' motion to dismiss Claims 1, 2, 4 and 5 because the defendants failed to establish that the plaintiff had not exhausted his administrative remedies with respect to those claims. *Id.* at 10-12. The court also rejected the defendants' contention that the statute of limitations barred Claims 1, 2, 4 and 5 because the defendants had not provided the court with evidence demonstrating when the statute of limitations began to run on those requests. *Id.* at 12 n.8. With respect to Claims 7 through 9, the court granted the defendants' motion for summary judgment because the searches conducted by the CIA and the Army were adequate. *Id.* at 15-19. The court, however, denied the defendants' motion for summary judgment on Claims 10 through 13 because the defendants failed to demonstrate that they had conducted adequate searches in response to those requests. *Id.* at 19-20. As a result, Claims 1, 2, 4, 5 and 10 through 13 survived the defendants' prior motion. *See generally id.*

The defendants subsequently filed this renewed motion to dismiss and for summary judgment, seeking to dispose of the plaintiff's remaining claims. *See generally* Defs.' Renewed Mot. The plaintiff opposes the defendants' motion and has also moved for summary judgment. *See generally* Pl.'s Opp'n to Defs.' Renewed Mot. & Mot. For Summ. J. ("Pl.'s Cross-Mot."). With these motions ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. The Court Grants the Defendants' Motion to Dismiss Claims 1 and 2

##### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts.
*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2. The Statute of Limitations Bars Claims 1 and 2 and Deprives the Court of Subject Matter Jurisdiction Over Those Claims

The DOS moves to dismiss Claims 1 and 2, which concern the records requests made to the DOS in March 1987 and June 1987, on the grounds that the statute of limitations deprives the court of subject matter jurisdiction over those claims. *See* Defs.' Renewed Mot. at 8-11. Specifically, the DOS advances a constructive exhaustion argument and contends that the statute of limitations for those claims began to run no later than December 31, 1995, the year in which it destroyed the files relating to those requests pursuant to its document retention policy. *Id.* at 8. Thus, the DOS argues, the six-year statute of limitations applicable to FOIA actions bars consideration of Claims 1 and 2, as the plaintiff did not commence this action until April 15, 2008. *Id.* at 9. The plaintiff does not respond to the DOS's arguments. *See generally* Pl.'s Mot. Although the plaintiff's failure to respond permits the court to grant this portion of the motion as conceded, *see Cooper v. Farmers New Century Ins. Co.*, 607 F. Supp. 2d 175, 180 (D.D.C. 2009) (granting the defendant's motion to dismiss as conceded based on the plaintiff's failure to respond to arguments raised in the motion), the court considers the merits of the defendants' argument.

The applicable statute of limitations for FOIA actions is set forth in 28 U.S.C. § 2401(a), which requires that a complaint be filed within six years of the accrual of a claim.[2] *Aftergood v. CIA*, 225 F. Supp. 2d 27, 29 (D.D.C. 2002) (citing 5 U.S.C. § 552; *Spannaus v. U.S. Dep't of*

---

[2] It is unclear from the parties' submissions whether the plaintiff's requests for information from the DOS were made under the FOIA or the Privacy Act. Giving the *pro se* plaintiff the benefit of the doubt, the court applies the longer six-year statute of limitations of the FOIA, 28 U.S.C. §2401(a), rather than the two-year statute of limitations for Privacy Act claims, 5 U.S.C. § 552a(g)(5).

*Justice,* 824 F.2d 52, 55 (D.C. Cir. 1987)). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Spannaus*, 824 F.2d at 55 (citing *United States v. Mottaz*, 476 U.S. 834 (1986); *Soriano v. United States*, 352 U.S. 270 (1957)).

A FOIA claim first accrues "when the plaintiff has actually or constructively exhausted his administrative remedies and therefore can institute and maintain a suit in court." *Porter v. CIA*, 579 F. Supp. 2d 121, 126 (D.D.C. 2008) (citing *Spannaus*, 824 F.2d at 56-57). A plaintiff constructively exhausts his remedies "when the time limits by which an agency must reply to a FOIA claimant's request or appeal (if there is an appeal) expire." *Aftergood*, 225 F. Supp. 2d at 29 (citing 5 U.S.C. § 552(a)(6)(C); *Spannaus*, 824 F.2d at 58).

In support of its argument for dismissal, the DOS submits the declaration of Peter M. Sheils, the Acting Director of the DOS Office of Information Programs and Services. *See generally* Defs.' Renewed Mot., Ex. A ("Sheils Decl."). According to Sheils, the DOS's internal case tracking system indicates that after receiving the plaintiff's records requests in March 1987 and June 1987, the DOS conducted searches for responsive documents. *Id.* ¶ 4. Those searches recovered no responsive records. *Id.* The DOS subsequently closed its case files pertaining to these requests in 1988 and 1990 respectively, and, in accordance with approved DOS document retention policies, destroyed these files in 1994 and 1995 based on the absence of activity. *Id.* The DOS possesses no additional data or correspondence regarding these requests. *Id.*

Because the DOS destroyed the relevant files in 1994 and 1995, the court has no record of whether the DOS responded to the plaintiff's requests or whether the plaintiff appealed any

6

such response by the agency.[3] *See id.* For the reasons discussed below, however, the absence of such records does not prevent the court from reaching a disposition of these claims.

If the DOS did not respond to the plaintiff's requests, the court would deem the plaintiff to have constructively exhausted his administrative remedies ten business days[4] after the submission of each request. *See* 5 U.S.C. § 552(a)(6)(C); *Aftergood*, 225 F. Supp. 2d at 29. Under this scenario, the statute of limitations on Claims 1 and 2 would have commenced running ten days after the plaintiff made the requests in 1987, *Porter*, 579 F. Supp. 2d at 126, and the plaintiff's claims would be time-barred, *see* 28 U.S.C. § 2401(a).

Assuming, on the other hand, that the DOS did respond to the plaintiff's requests and that the plaintiff did pursue an administrative appeal,[5] any such activity must have concluded by 1995, when the DOS destroyed the files at issue, as the DOS recovered no subsequent correspondence or records reflecting activity in connection with these requests. *See* Sheils Decl. ¶ 4. Accordingly, at the very latest, Claims 1 and 2 must have accrued by 1995, meaning that

---

[3] The plaintiff appears to acknowledge that the defendants replied to each of his records requests, stating in his complaint that he made numerous FOIA requests and "was told each time the . . . agencies had no record of him." Compl. ¶ 4.5. The plaintiff, however, provides no specific details concerning the defendants' responses to any specific records request, including the ones made in March and July 1987. *See generally id.*

[4] In 1987, the DOS had ten business days to respond to a FOIA request. *See* 5 U.S.C. § 552(a)(6)(A)(i) (1986). In calculating the deadlines for constructive exhaustion of Claims 1 and 2, the court applies the law as it existed in 1987, when the plaintiff made the requests. *See Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 194 (1990) (noting that courts are obliged to "apply old law to litigants . . . if the operative conduct or events . . . occurred prior to the new" law).

[5] If the plaintiff did not appeal the DOS's responses, Claims 1 and 2 would be barred for failure to exhaust administrative remedies. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990) (noting that "cases foregoing an administrative appeal will preclude the requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies") (citing *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 59 (D.C. Cir. 1987)). "[A]n administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed . . . . Once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review." *Id.* at 63-64.

these claims would be time-barred because the plaintiff did not raise them until April 2008, *see generally* Compl., well after the six-year statute of limitations had expired, *see* 28 U.S.C. § 2401(a).

Thus, regardless of whether the DOS responded to the plaintiff's March 1987 and June 1987 requests, and even if the plaintiff properly exhausted his administrative remedies with respect to those requests, the claims premised on these requests are time barred. Accordingly, the court lacks subject matter jurisdiction over Claims 1 and 2 and grants the defendants' motion to dismiss these claims.

### B. The Court Grants the Defendants' Motion for Summary Judgment Based on the Adequacy of the Searches Conducted by the CIA and Army and Denies the Plaintiff's Motion for Summary Judgment on all Remaining Claims

#### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is

one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

### 2. The Court Grants Summary Judgment to the CIA and Army Based on the Adequacy of their Searches

#### a. Legal Standard for FOIA Adequacy of Agency Search

"A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). To prevail on summary judgment, an agency must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d at 68). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby*, 920 F.2d at 67 n.13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document if "the agency is no longer in possession of the document[] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby*, 920 F.2d at 68). While an

agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* (internal quotations and citations omitted). If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

### b. The CIA and Army Have Established that They Conducted Adequate Searches in Response to the Plaintiff's Remaining Requests

In response to the court's previous memorandum opinion, the CIA and the Army undertook additional searches with respect to Claims 4, 5 and 10 through 13. *See* Defs.' Renewed Mot. at 13-15. They contend that these new searches were thorough and adequate and warrant summary judgment in their favor. *Id*. at 14-15. The plaintiff does not dispute the adequacy of these new searches. *See generally* Pl.'s Mot. Instead, the plaintiff argues that "the Department of the Army has declined to seek out or explain the source of the Department of Veterans Affairs [("VA")] records showing plaintiff's enlistment." *Id*. at 8. The plaintiff contends that *McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983), compels the Army to reconcile its absence of responsive records with the purported VA records reflecting the plaintiff's enlistment. Pl.'s Mot. at 9.

As it did in its previous memorandum opinion, the court will consider declarations from Delores Nelson[6] and Elizabeth Tatum[7] in assessing whether the CIA and the Army conducted

---

[6] Delores M. Nelson is the Information and Privacy Coordinator in the Office of the Chief Information Officer of the CIA and is responsible for administering FOIA requests. Defs.' Renewed Mot., Ex. B ¶ 1. She has served with the CIA for approximately twenty-nine years. *Id*. ¶ 2.

10

reasonable searches for documents responsive to the plaintiff's FOIA requests. *See Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (holding that the district court may rely on agency affidavits as long as they are "relatively detailed . . . nonconclusory and submitted in good faith"); *see also* Mem. Op. (Mar. 24, 2009) at 16.

The Nelson declaration states that the CIA conducted new searches for records responsive to Claim 4 and 5 following the court's previous memorandum opinion. *See* Defs.' Renewed Mot., Ex. B ("Nelson Decl.") ¶ 21. Specifically, the declaration explains that the CIA searched five records systems for responsive documents: the Directorate of Intelligence; the National Clandestine Services; the Directorate of Science and Technology; the Directorate of Support, Office of Security; and the Director's Area. *Id.* ¶ 22. The CIA searched these databases using variations of the plaintiff's name and, when appropriate, his social security number and date of birth. *Id*. These searches did not locate any records related to the plaintiff. *Id*. Nelson's declaration states further that, "out of an abundance of caution," the CIA's search extended beyond the typical databases it would reasonably expect to contain responsive records. *Id.* ¶ 23.

Similarly, the Tatum declaration indicates that the Army conducted new searches for records responsive to Claims 10 through 13 following the court's previous memorandum opinion. *See* Defs.' Renewed Mot., Ex. D ("Tatum Decl.") ¶ 10. The declaration explains that the Army searched four records systems for responsive documents: the Interactive Permanent Electronic Management System; the National Personnel Records Center's Electronic Military Records; the Defense Manpower Data Center; and the Beneficiary Individual Records Locator System. *Id.* ¶ 11. The Army searched these databases using the plaintiff's name and, when

---

[7] Elizabeth B. Tatum has served as the Chief of the Veterans Support Branch for twenty-seven years. Defs.' Renewed Mot., Ex. D ¶ 4. She is "responsible for managing requests for service records made by U.S. Army veterans." *Id*. ¶ 5.

11

appropriate, his social security number. *Id.* ¶ 16. Like the CIA's searches, the Army's searches failed to locate any records of service for the plaintiff. *Id.* ¶ 17.

In assessing the adequacy of an agency's search efforts, the court considers whether they were "reasonably calculated to uncover all relevant documents," *Nation Magazine*, 71 F.3d at 890, bearing in mind that the defendants are not required to search all of their records or conduct a perfect search, *SafeCard Servs.*, 926 F.2d at 1201. This court previously deemed nearly identical searches by the CIA and the Army reasonable in light of similarly detailed declarations provided by Nelson and Tatum. *See* Mem. Op. (Mar. 24, 2009) at 17; *see also Kucernak v. FBI*, 1997 WL 697377, at *2 (9th Cir. Nov. 2, 1997) (holding that a CIA search in the Directorate of Operations and Directorate of Intelligence databases was adequate under FOIA); *Maynard v. CIA*, 986 F.2d 547, 561 (1st Cir. 1993) (finding that a CIA search of similar databases was adequate under FOIA). The plaintiff has not provided any evidence that the defendants' affidavits are in bad faith. *See generally* Pl.'s Mot. In the absence of any contrary suggestion by the plaintiff, the court concludes that the new searches conducted by the CIA with respect to Claims 4 and 5 and by the Army with respect to Claims 10 through 13 were adequate.[8]

Although the plaintiff complains that the defendants failed to seek out or explain the source of the purported VA records reflecting his military service, *see* Pl.'s Mot. at 8., the court's inquiry in a FOIA action does not concern whether any documents responsive to the plaintiff's request may exist. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

---

[8] That these additional searches were conducted after the submission of dispositive motions, rather than in immediate response to the plaintiff's request, has no bearing on the resolution of these motions. *See Pinkney v. U.S. Dep't of Justice*, 2007 WL 2059129, *3-4 (D.D.C. July 18, 2007) (granting the defendant's motion for summary judgment after the defendant conducted new searches following the plaintiff's motion for summary judgment); *NYC Apparel FZE v. U.S. Customs & Border Prot.*, 484 F. Supp. 2d 77, 84, 88 (D.D.C. 2007) (deeming adequate an agency search conducted after the court denied the defendant's first motion for summary judgment); *accord Looney v. Walters-Tucker*, 98 F. Supp. 2d 1, 2, 4 (D.D.C. 2000).

Instead, the court's inquiry concerns only "whether the search for those documents was adequate." *Id*. "Nothing in the law requires the agency to document the fate of documents it cannot find." *Roberts v. U.S. Dep't of Justice*, 1995 WL 356320, at *2 (D.D.C. Jan. 29, 1993). Thus, even if the defendants had offered no explanation for the VA records cited by the plaintiff, this fact would have no bearing on the court's analysis of these motions.[9] In any case, the defendants have gone above and beyond their strict obligations under the FOIA by providing an explanation of the VA records in question. *See* Defs.' Mot., Ex. A ¶ 3-5.[10]

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss and for summary judgment and denies the plaintiff's cross-motion for summary judgment. An Order

---

[9] *McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983), provides no support to the plaintiff. In *McGehee*, the CIA uncovered documents responsive to the plaintiff's FOIA request but withheld some of those documents on the grounds that they originated from other agencies. *Id.* at 1100-01. The Circuit rejected the CIA's argument that the documents originating from other agencies were not "agency records" within the meaning of the FOIA. *Id.* at 1109. Crediting such an argument, the Circuit reasoned, would allow agencies to shuffle documents from agency to agency in an attempt to shield the documents from disclosure. *Id*. Here, there is no evidence that the defendants refused to disclose any documents because they originated from another agency. *See generally* Compl.; Pl.s' Mot. To the contrary, the defendants have offered unrebutted evidence that they adequately searched all relevant records collections and failed to locate any documents responsive to the plaintiff's requests.

[10] The defendants attached to their first motion the declaration of George Wolohojian, the Director of the Department of Veterans Affairs, Veterans Benefit Administration Baltimore Regional Office. *See generally* Defs.' 1st Mot. to Dismiss & for Summ. J., Ex. A. Wolohojian explains that the plaintiff submitted an application for compensation or pension to the VA on May 4, 1988, in which he declared that he had served in the U.S. Army from November 1973 to November 1975. *Id.* ¶ 3. Upon receipt of this application, the VA entered this information provided by the plaintiff into a computer. *Id.* ¶ 4. The declaration indicates that the VA did not verify this information, which then remained in the VA computer records. *Id.* Because the National Personnel Records Center could not verify the plaintiff's service, Wolohojian concludes that "the information in our computer system identifying [the plaintiff] as serving in the Army from November 1973 to November 1975 was reported by [the plaintiff] on his applications for benefits and has not been provided by any other source." *Id.* ¶ 5.

consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of March, 2010.

RICARDO M. URBINA
United States District Judge